

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. O-3776
Re: Will the gross receipts tax
under Article 7060, as amended
by H. B. 8, apply to sales of
liquefied petroleum gas where
made within the incorporated
towns?

We are in receipt of your letter of July 17,
1941, in which you request the opinion of this depart-
ment on the question contained therein as follows:

"Article 7060, R.C.S., 1925, and as amend-
ed by House Bill No. 8 of the Forty-seventh Leg-
islature, provides in part as follows:

"'Each individual, company, corporation,
or association owning, operating, managing,
or controlling any gas, electric light, elec-
tric power, or water works, or water and
light plant, located within any incorporated
town or city in this State, and used for
local sale and distribution in said town or
city, and charging for such gas, electric
lights, electric power, or water, shall make
quarterly, on the first day of January, April,
July, and October of each year, a report to
the Comptroller under oath of the individ-
ual, or of the president, treasurer, or su-
perintendent of such company, or corporation,
or association, showing the gross amount re-
ceived from such business done in each such
incorporated city or town within this State
in the payment of charges for such gas,
electric lights, electric power, or water
for the quarter next preceding. Said individ-

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, page 2

ual, company, corporation, or association,
at the time of making said report for any
such incorporated town or city of more than
one thousand (1,000) inhabitants and less
than two thousand, five hundred (2,500) in-
habitants, according to the last Federal
Census next preceding the filing of said
report, shall pay to the Treasurer of this
State an occupation tax for the quarter be-
ginning on said date equal to forty-four
hundredths (.44) of one (1) per cent of
said gross receipts, as shown by said re-
port; etc.'

"There is now sold to the consumer within
the incorporated towns a liquefied petroleum gas.
This gas, as a rule, is delivered to the con-
sumer in liquid form and in order to retain its
liquid state, it must be kept under high pres-
sure but when released for the burner tip, it
turns to a gas vapor. There are instances where
a tank is installed on a lot from which a num-
ber of customers are taken care of by the gas
being piped to the homes; in this case, as in
the individual case, as soon as the pressure
is released at the tank the gas vapor is formed
and piped from house to house.

"Please tell me if the gross receipts tax,
under the above article, will apply to such sales
where made within the incorporated towns."

It may be seen that the article you quote in
your letter contains two requirements before an individ-
ual becomes liable for the tax discussed therein.  In
the first place, in relation to the questions asked,
the individual must operate within an incorporated city
"any gas plant."  Also the same must be used "for local
sale and distribution of gas."  The tax is based upon
the gross amount received from the business done in the
payment of charges for the gas.  You have furnished us
with the additional facts that the liquid gas in ques-
tion is a component part or derivative of natural gas
which is liquefied by pressure and temperature.  In its
natural state it is a gas.  It is sold to the consumer

Honorable George R. Sheppard, page 3

either as a liquid or as a gas. Prior to its consumption it returns to its gaseous state. The first question arises as to whether or not the commodity you inquire about is gas within the meaning of the above quoted statute. You have advised us that the commodity is either a propene or a butane.

Propane is defined by Webster as follows:

"A heavy gaseous hydro-carbon, $CH_3 CH_2 CH_3$, of the paraffin series, occurring naturally dissolve in crude petroleum."

Butanes are defined by Webster as follows:

"Either of two isomeric, inflamable, gaseous hydrocarbons, $C_4 H_{10}$, of the methane series; * * * ."

Both of the above definitions recognize the commodity to be a gaseous substance. It is our understanding that the same is liquefied by pressure and temperature for purposes of transporting and handling. In this connection the Austin Court of Civil Appeals, in the case of DALLAS GAS COMPANY v. STATE, 261 S.W. 1063, writ of error refused by the Supreme Court, stated in connection with the taxing statute under consideration here, as follows:

"In its second proposition, based upon assignments 7 and 11, appellant contends that the term 'gas' as used in the statute means only artificial gas and does not include natural gas. We know of no rule of construction whereby such a conclusion could be reached. 'Any gas plant' certainly is broad enough and does include both natural and artificial gas. 4 Words and Phrases (First Series) p. 3044; 2 Words and Phrases (Second Series) p. 702; Indianapolis v. Consumers Gas Trust Co., 144 Fed. 640, 75 C.C.A. 442." (Underscoring ours)

Thus the Court of Civil Appeals indicates that the term "gas" is to be broadly construed as to any type of gas.

We believe that the language of the tax statute

Honorable George H. Sheppard, page 4

in question is broad enough to include butane and pro-
pane gas whether sold in liquid or gaseous state. The
above commodities are commonly referred to as liquefied
petroleum gas. Apparently, the forty-fifth Legislature
in 1937 considered liquefied petroleum gas as a type of
gas. That Legislature passed House Bill No. 1017, Ch.
364, which reads, in part, as follows:

"Sec. 2. In addition to the duties and
powers of the Commission hereinabove set forth,
it is empowered and it shall be its duty to in-
vestigate the use of malodorants by persons,
firms or corporations engaged in the business
of handling, storing, selling or distributing
natural and liquefied petroleum gases, includ-
ing butane and other odorless gases, for pri-
vate or commercial uses, or supplying the same
by pipe lines or otherwise, to any public build-
ing or buildings or the general public, and the
Commission is empowered to require such persons,
firms or corporations to odorize such gas by the
use of a malodorant agent of such character as
to indicate by a distinctive odor the presence
of gas; such malodorant agent so required to be
used, however, shall be non-toxic and non-corro-
sive and not harmful to leather diaphragms in
gas equipment, the method of its use and contain-
ers and equipment to be used in connection there-
with to be under the direction of and as approved
by the Railroad Commission of Texas; the Com-
mission having full power and authority to pre-
scribe such rules and regulations as in its
wisdom may be deemed necessary to carry out the
purposes of this Act. Nothing herein contained
shall apply to gas transported out of the State
of Texas." (Underscoring ours).

Again in the emergency clause of the above quoted
Act, the Legislature stated as follows:

"Sec. 5. The fact that in the past few
weeks hundreds of lives have been lost from
causes apparently due to escaping or accumu-
lated gas explosions, and that numerous such

Honorable George H. Sheppard, Page 5

accidents are constantly occurring by reason of
the fact that butane liquefied petroleum gas
is practically okorless and undetectable, creates
an emergency * * * ."   (Underscoring ours)

It is our opinion and answer to the first ques-
tion that liquid petroleum gas is gas within the meaning
of Arficle 7060 as amended by House Bill 8, Acts of the
Forty-seventh Legislature, 1941.

In answer to the second question, we are advis-
ed that the individuals or corporations that sell this
commodity transport the same either by means of pipe line
in the city or by means of trucks carrying tanks of the
same in its liquid state.  The question arises as to wheth-
er the operation of such method of transportation puts
the individual or corporation within the category of op-
erating a "gas plant" as that term is used in Article
7060, supra.  The Austin Court of Civil Appeals in the
case of UTILITIES NATURAL GAS CO. v. STATE, 118 S.W. (2d)
297, in discussing the definition of the term "gas plant"
within the meaning of Article 7060, stated as follows:

"The sole contention of appellant is that
it is not a 'gas plant' within the meaning of
the term as used in the statute, because it only
owns and operates a single pipe line and sells
gas to only one customer within the city of Vic-
toria.  We have reached the conclusion that when
the statute is construed from its four corners
and in the light of the purpose of its enactment,
it cannot be so limited.

"It is true the statute designates the
tax as 'an occupation tax', but it clearly ap-
pears from the language used that the tax is
an excise laid on businesses 'owning, operating
or managing or controlling any gas * * * plant
* * * within any incorporated town or city * **
for local sale and distribution * * * of gas.'
Group No. 1 Oil Corp. v. Sheppard, Tex. Civ.
App., 89 S.W. (2d) 1021, error ref.; Trustees
of Cook's Estate v. Sheppard, Tex. Civ. App.,
89 S.W. (2d) 1026, error ref., affirmed by the

Honorable George H. Sheppard, Page 6

Supreme Court of the United States, Barwise v.
Sheppard, 299 U.S. 33, 57 S. Ct. 70, 81 L. Ed.
23. It also clearly appears from the language
of the statute that the legislature intended to
tax the business undertaking or enterprise and
not the method or manner of conducting it, be-
cause the statute does not undertake to define
in any manner the term 'gas plant' as indicative
of the business sought to be taxed. Peerless
Carbon Black Co. v. Sheppard, Tex. Civ. App.,
115 S.W. (2d) 996, error ref. In consequence,
the term 'gas plant' as used in the statute in-
cludes any method or manner whereby the business
of selling and distributing gas is carried on
within any incorporated city or town. Dallas
Gas Co. v. State, Tex. Civ. App., 261 S.W. 1063,
error ref. (Underscoring ours).

"In 3 Bouv. Law Dict., Rawle's Third Revi-
sion, p. 2597, the word or term 'plant' is de-
fined as being 'the furnitures and tools neces-
sary to carry on any trade or mechanical business.'
A highly complex or elaborate system is not neces-
sary, but the most simply system whereby the bus-
iness of selling and distributing gas to local
trade within any incorporated city or town will
suffice under the taxing statute as a gas plant.
Under this rule the pipe line system and apparatus
of appellant located in the city of Victoria,
whereby it sells and delivers gas to local trade,
constitutes its gas plant by and through which
it carries on its gas business in said city, and
such is the business intended to be taxed by the
statute.

"  * * * .

"As already held the tax is not imposed
on the plant, or method or manner of conducting
the gas business, but is laid on businesses en-
gaged in selling and distributing or delivering
gas to local trade within any incorporated town
or city." (Underscoring ours).

The court further stated that the sale by the

Honorable George H. Sheppard, Page 7

Utilities Natural Gas Company by pipe line to only one
customer in the city of Victoria amounted to a distribu-
tion of the gas in said city within the meaning of the
tax statute. The Commission of Appeals reversed the
Austin Court of Civil Appeals in an opinion reported in
128 S.W. (2d) 1153. The Commission did not quarrel with
the definition of "gas plant" stated by the Austin Court
of Civil Appeals, but the Commission of Appeals held that
the sale to a single customer in the city of Victoria did
not amount to "use for local sale and distribution" of
gas in the city as the statute contemplated. The Commis-
sion of Appeals concludes as follows:

> "But considered in the light of the provi-
> sions of the statute, as a whole, we have no doubt
> that the simple fact that a delivery of gas is
> made in the city, by means of said pipe line to
> a single customer and to nobody else, was not in-
> tended by the Legislature to be comprehended by
> the term 'distribution' as used. This term as
> used does not mean the transfer of the possession
> of gas, by means of the pipe line, to a single
> purchaser where such purchaser is the only cus-
> tomer to whom the gas company sells gas in the
> city. It means the transfer of possession of
> gas to various individuals or concerns in the
> city. Any other construction of the term would,
> in our opinion, involve a departure from the
> legislative intent. Since, therefore, the use
> of 'gas-works,' in a city or town in this State,
> for the distribution of gas in said city or town
> is, by statute, made an essential characteristic
> of the business taxed, it follows that the bus-
> iness in which the plaintiff in error is engaged,
> as disclosed by the undisputed facts, is not
> subject to the tax which this statute provides."

It is the opinion of this department in line
with the above quoted cases that any individual or corpor-
ation selling or distributing liquid petroleum gas to more
than one consumer in any incorporated city within the pop-
ulation brackets stated in Article 7060, as amended by

Honorable George H. Sheppard, Page 8

House Bill 8, Acts of the Forty-seventh Legislature, 1941, would be subject to the gross receipts tax levied therein.

APPROVED AUG 1, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Billy Goldberg

Billy Goldberg
Assistant

BG:ob


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN